IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN B. DEVRIES and ROBERTA DEVRIES | : Consolidated under MDL 875<br>: CIVIL ACTION<br>: NO. 5:13-CV-0474 |
| vs. | :<br>: |
| WARREN PUMPS, LLC, et al. | : |

## WARREN PUMPS, LLC'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, Warren Pumps, LLC., (hereinafter "Warren"), by and through counsel, hereby files this Supplemental Reply Brief in Support of Its Motion For Summary Judgment.

**I.     Introduction**

Warren Pumps, LLC filed a Motion for Summary Judgment and Reply Brief in support thereof at ECF 263 and ECF 320.  Plaintiffs now seek to re-open argument on the issues already briefed before this Court, based on a decision this Court made in a wholly unrelated, and factually and legally distinguishable case in January 2014.  *See* Salisbury v. Asbestos Corp. LTD., No. 12-60186, 2014 U.S. Dist. LEXIS 11295 (Order Dated January 29, 2014) (Robreno, J.).  Plaintiffs claim that the Salisbury decision is relevant to the issues before this Court with respect to the pending motions for summary judgment, and, if applied here, would result in denial of the various defendants' motions to the extent they are based on the bare metal defense this Court has typically and consistently applied to cases sounding in maritime law.  However, Salisbury and its progeny pertain only to shipbuilders and not product/equipment manufacturers such as Warren; thus, its holding does not apply to the case *sub judice*.  Essentially, the relationship between seaman-plaintiffs and shipbuilder defendants is legally distinct from the relationship between seaman-plaintiffs and equipment manufacturers such as Warren.

Shipbuilder defendants are service providers while equipment manufacturers are sellers of component parts—this distinction alters the legal liability that can be imposed on the disparate types of defendants under maritime law.  Accordingly, Salisbury is irrelevant to this case and Plaintiffs' Motion for Leave should be denied.

**II.     The Relationship Between a Shipbuilder Defendant and a Seaman Claiming an Injury from Asbestos Exposure Is Legally Distinct from the Relationship Between an Equipment Manufacturer and a Seaman Claiming an Injury from Asbestos Exposure**

Shipbuilder defendants such as those in Salisbury, are providers of a service rather than a manufacturer or supplier of a product.  Mack v. General Electric Co., 896 F.Supp. 2d 333, 345 (E.D. Pa. 2012).  This distinction is legally significant because it allows shipbuilder defendants to escape any claim whatsoever sounding in strict liability since the shipbuilder defendant by definition does not fall under the purview of RESTATEMENT (SECOND) OF TORTS §402A.  Mack, 896 F.Supp. at 346 ("The concept of strict tort liability does not apply to defective services, as opposed to defective products").  Ultimately, this distinction also precludes shipbuilder defendants from relying on the bare metal defense, as explained below.  Thus, shipbuilder defendants cannot be conceptually or legally equated with equipment manufacturers and, conversely, equipment manufacturers cannot be equated with shipbuilder defendants with respect to availability of the bare metal defense.

Turning to the Salisbury decision, the plaintiff brought forth claims sounding in strict liability and negligence against a shipbuilder—Huntington Ingalls, Inc., f/k/a Northrup Grumman Shipbuilding, Inc. (hereinafter "Huntington Ingalls").  Id. at *2.  Plaintiff alleged that he served in the Navy from 1957 until 1979.  Id.  Apparently, Huntington Ingalls built two ships, the *USS Hornet* and *USS Coral Sea*, on which plaintiff performed certain repairs and was allegedly exposed to asbestos.  Id.  This Court granted Huntington Ingalls' motion for summary

judgment on the issue of strict liability re-asserting that a Navy ship is not a "product" for purposes of a strict liability claim.  Id. citing Mack v. General Electric Co., 896 F.Supp. 2d 333, 345 (E.D. Pa. 2012).

Separate from the strict liability claim, this Court found that Huntington Ingalls owed a duty of reasonable care under maritime law.  Salisbury, at *8, citing Filer v. Foster Wheeler, LLC, No. 12-60034, 2014 U.S. Dist. LEXIS 11287, *12 (Order dated January 28, 2014) (Robreno, J.) (hereinafter "Filer II") (holding that a Navy shipbuilder owes a plaintiff "a duty of reasonable care" under the circumstances). The determination that a Navy shipbuilder owes a plaintiff a duty of reasonable case was decided in a previous Order from this Court in the Filer case.  Filer v. Foster Wheeler, LLC, No. 12-60034, 2014 U.S. Dist. LEXIS 11283 (Order dated January 28, 2014) (Robreno, J.) (hereinafter "Filer I").  Within this background of cases, this Court has rejected shipbuilders' reliance on the bare metal defense in the context of negligence claims brought by seamen.  Concomitantly, this Court has continued to apply the "bare metal" defense with respect to Navy seamen's claims of exposure to asbestos through equipment such as pumps where there is no evidence that the pump manufacturer actually supplied any of the allegedly asbestos-containing components through which exposure occurred.   Moreover, this Court did not explicitly or impliedly overrule its consistent holdings applying the bare metal defense in favor of equipment manufacturers such as Warren Pumps in situations identical to the case *sub judice*.

### III. Warren Pumps, LLC Is An Equipment Manufacturer, Not a Shipbuilder, and The Bare Metal Defense Still Applies To Equipment Manufacturers In The Wake of Salisbury

In Filer I, plaintiffs sued shipbuilders for alleged exposure to insulation manufactured by other companies, but installed onto the ships by the defendants.  Filer I, at 5.  The shipbuilder

defendants attempted to avoid a negligence claim by arguing that the finished ship was not a product for purposes of a strict liability claim, thus, it was also not "chattel" within the meaning of RESTATEMENT (SECOND) OF TORTS §388.  Filer I at *19-21.  By extensions, the shipbuilder defendants argued that they were more similar to land or premises owners than suppliers of chattel.  Id. at 21.  This Court disagreed with the shipbuilder defendants finding that just because the ship was not a "product," did not mean that the ship was also not "chattel" under the RESTATEMENT.  Id.  In fact, a shipbuilder's liability is based on the service its provides—namely the supply of individual products (insulation in Filer I), which are considered products and chattel.  Id. at 22.

In the context of the above, this Court rejected the shipbuilder's attempted reliance on the bare metal defense and differentiated the defense when advanced by equipment manufacturers versus shipbuilders.  Id. at *29-30.  First, this Court pointed out that the bare metal defense applies to situations wherein the asbestos-containing component (e.g., packing/gaskets) is designed to be incorporated into another product (e.g., turbine/pump).  Id. at 29-30.  Second, since the ship is not a "product" (under 402A or otherwise) the various products within the ship, assembled by the shipbuilder defendant, are not "component parts of the ship."  Id. at 30.  Moreover, the products installed by the shipbuilder defendants were not considered products designed to be used in connection with each other like packing in a pump.  Id.

In Salisbury, the plaintiff provided testimony that he was exposed to asbestos from the original thermal insulation on board the subject Naval vessels.  Salisbury, at *15.  While the shipbuilder, Huntington Ingalls disputed this, this Court found that based on the nature of the relationship it did not matter whether the insulation was the original or replacement insulation because it was a jury question as to whether a shipbuilder's (as opposed to an equipment

manufacturer's) failure to warn about the insulation, which caused the injury, was reasonable or not. Id. at *18-20. The difference here is, again, the nature of the relationship between the defendant and plaintiff, i.e., shipbuilder and plaintiff versus, equipment manufacturer and plaintiff.

Based on the above, Salisbury, Filer I, and Filer II, stand for the proposition that shipbuilder defendants may not invoke the bare metal defense as a legal defense to a seaman's claims for injuries caused by asbestos exposure. Significantly, these holdings have no impact on the availability of the bare metal defense to an equipment manufacturer against a seaman's claims against it. Plaintiffs' Motion for Leave implicitly relies on the contention that this Court has disavowed its holding in Conner v. Alfa Laval, Inc. 842 F.Supp. 2d 791 (E.D.Pa. Feb. 1, 2012) ( Robreno, J.) (hereinafter "*Conner II*"). Moreover, Plaintiffs' Motion for Leave also necessitates a finding or recognition that the holding in Lindstrom v. A-C Prod. Liab. Trust, is no longer applicable to maritime law cases brought in this District. 424 F.3d 488, 494-95 (6th Cir. 2005) (establishing a bare metal defense).

IV. Conclusion

Plaintiffs' attempt to bootstrap the case *sub judice* to the Salisbury case should fail as it simply neglects to recognize or account for the legal and factual differences between a seaman's claims against a shipbuilder and a seaman's claims against an equipment manufacturer such as Warren. Just as the legal relationships between plaintiffs and defendants differ in the shipbuilder cases compared with the case *sub judice*, so too does the availability of the bare metal defense. It is well-established at this point that equipment manufacturers are only legally responsible for component parts which they manufactured or distributed. *See, e.g.,* Lindstrom v. A-C Prod. Liab. Trust, 424 F.3d 488, 494-95 (6th Cir. 2005); Conner v. Alfa Laval, Inc., 842 F.Supp. 2d

791 (E.D.Pa. Feb. 1, 2012) ( Robreno, J.).  Despite Plaintiffs' claims or arguments to the contrary, nothing in the Salisbury holding has changed the application of the bare metal defense in this case.

WHEREFORE, for the foregoing reasons, and for the reasons set forth in Warren's Motion for Summary Judgment, Memorandum of Law, and Reply Brief, it is respectfully requested that this Court grant Warren Pumps, LLC's motion for summary judgment and dismiss Warren Pumps from this action with prejudice.

<div style="margin-left: 3em">

**MARSHALL, DENNEHEY, WARNER COLEMAN & GOGGIN**
2000 Market Street, Suite 2300
Philadelphia, PA  19103

BY:     s/ Joshua D. Scheets
DANIEL J. RYAN, JR., ESQUIRE
djryan@mdwcg.com
JOSHUA D. SCHEETS, ESQUIRE
jdscheets@mdwcg.com
(215) 575-2751
*Attorneys for Defendant,* Warren Pumps

</div>

# CERTIFICATE OF SERVICE

I, Joshua D. Scheets, do hereby certify that a true and correct copy of Defendant Warren Pumps, LLC's Motion for Summary Judgment was served upon all parties by electronic service through the Court's ECF/Pacer system on July 8, 2014.

        **MARSHALL, DENNEHEY, WARNER COLEMAN & GOGGIN**
         2000 Market Street
         Philadelphia, PA  19103

BY:    s/ Joshua D. Scheets
    DANIEL J. RYAN, JR., ESQUIRE
    djryan@mdwcg.com
    JOSHUA D. SCHEETS, ESQUIRE
    jdscheets@mdwcg.com
    (215) 575-2751
    *Attorneys for Defendant, Warren Pumps, LLC*