```
                  IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN B. DEVRIES,              :    CONSOLIDATED UNDER
ET AL.,                       :    MDL 875
                              :
       Plaintiffs,            :
                              :
                              :
       v.                     :
                              :
                              :
GENERAL ELECTRIC COMPANY,     :    E.D. PA CIVIL ACTION NO.
ET AL.,                       :    5:13-00474-ER
                              :
       Defendants.            :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                           May 18, 2016


     This case was removed in January of 2013 from the
Court of Common Pleas of Philadelphia to the United States
District Court for the Eastern District of Pennsylvania, where
it became part of the consolidated asbestos products liability
multidistrict litigation (MDL 875). The basis of jurisdiction is
federal question jurisdiction (pursuant to 28 U.S.C. § 1442).

     Plaintiffs allege that John DeVries was exposed to
asbestos from various products while serving in the U.S. Navy
during the time period 1957 to 1960. After the completion of
discovery, numerous defendants moved for summary judgment,
contending that Plaintiffs' evidence was insufficient to
establish causation with respect to any product(s) for which it

could be held liable. This Court determined that maritime law was applicable to the claims against each of the product manufacturer Defendants now opposing Plaintiffs' appeal[1] and, after applying maritime law (including the so-called "bare metal defense" as applied under maritime law), granted each of these Defendants' motions.

Plaintiffs thereafter appealed, contending that this Court misapplied the maritime law "bare metal defense" and, in particular, that it failed to consider the viability of Plaintiffs' negligence claims. By way of Order dated February 5, 2016 (the "February 5th Order") (ECF No. 368 in D.C. No. 5:13-cv-474), the United States Court of Appeals for the Third Circuit remanded the case to this MDL Court for explicit consideration and clarification of the issues of whether this MDL Court (1) considered the negligence theory of liability when it granted summary judgment in its entirety to the product manufacturer defendants, (2) concluded that the "bare metal defense" applies to claims sounding in negligence, and (3) considered whether the circumstances of the present case warrant application of the legal rationale by which certain other courts' decisions (identified in the February 5th Order)

---

[1]     These product manufacturer Defendants are:  Buffalo Pumps, Inc., CBS Corporation, Foster Wheeler LLC, General Electric Company, IMO Industries, Inc., and Warren Pumps.

exempted negligence claims from being barred by the defense. As directed by the February 5th Order, the Court hereby clarifies its application of the so-called "bare metal defense," as recognized by maritime law, to claims brought by Plaintiffs against the appealing product manufacturer Defendants.

I.    **Background and History Surrounding the MDL's Adoption of the Maritime Law "Bare Metal Defense"**

By way of the decision in Conner v. Alfa Laval, Inc., 842 F. Supp. 2d 791 (E.D. Pa. 2012) (Robreno, J.), this MDL Court adopted the so-called "bare metal defense" as applied by the United States Court of Appeals for the Sixth Circuit in two separate maritime law cases:[2] Lindstrom v. A-C Product Liability Trust, 424 F.3d 488 (6th Cir. 2005) and Stark v. Armstrong World

---

[2]    In addition, the Court notes that, at the time of its decision to adopt the Lindstrom rule in February of 2012, the "bare metal defense" (although not necessarily identified with that coinage) had already been considered by a magistrate judge in the MDL, who had issued a Report and Recommendation that reached the same conclusion regarding the application of the "bare metal defense" under maritime law. See Sweeney v. Saberhagen Holdings, Inc., No. 09-64399, 2011 WL 346822, at *6 (E.D. Pa. Jan. 13, 2011) (Strawbridge, M.J.). The Court accepted and adopted the recommendation, and applied it in deciding summary judgment motions in Sweeney v. Saberhagen Holdings, Inc., No. 09-64399, 2011 WL 359696 (E.D. Pa. Feb. 3, 2011)(Robreno, J.), Delatte v. A.W. Chesterton Co., No. 09-69578 (multiple summary judgment motions decided, e.g. 2011 WL 4910416 (E.D. Pa. Feb. 28, 2011) (Robreno, J.)), and Ferguson v. Lorillard Tobacco Co., Inc., No. 09-91161 (multiple summary judgment motions decided, e.g., 2011 WL 4910416 (E.D. Pa. Mar. 2, 2011)(Robreno, J.)).

<u>Industries, Inc.</u>, 21 F. App'x 371 (6th Cir. 2001)[3] – decisions consistent with, and bolstered by, the then-governing[4] decisions on the issue under California and Washington state law. At the time of this MDL Court's decision in <u>Conner</u>, the Sixth Circuit was the only federal appellate court to have considered the so-called "bare metal defense" under maritime law (or any other law) in the context of asbestos litigation. The only two states whose highest courts had considered the issue in the context of

---

[3]   <u>Stark</u>, standing alone, does not provide a comprehensive outline of the "bare metal defense" and its application under maritime law because it addresses only strict liability claims (while acknowledging the possibility of negligent failure-to-warn claims apparently not pursued by that plaintiff). 21 F. App'x at 374-75. Nonetheless, it begins the development of the defense under maritime law and is cited repeatedly by the Sixth Circuit in <u>Lindstrom</u>, which further expounds upon the rules of law underlying the "defense."

[4]   As this MDL Court acknowledged in <u>Schwartz v. Abex Corp.</u>, 106 F. Supp. 3d 626 (E.D. Pa. 2015) (Robreno, J.), "the Supreme Court of Washington appears to have since retreated somewhat from its earlier adoption of the so-called 'bare metal defense' in <u>Simonetta [v. Viad Corp.</u>, 165 Wash.2d 341, 197 P.3d 127 (Wash. 2008),] and <u>Braaten [v. Saberhagen Holdings</u>, 165 Wash.2d 373, 198 P.3d 493 (Wash. 2008)] . . . [by later] distinguish[ing] the facts in <u>Macias v. Saberhagen Holdings, Inc.</u>, 175 Wash.2d 402, 282 P.3d 1069 (Wash. Aug. 9, 2012), and holding that a product manufacturer can at least sometimes be liable for failure to warn of the hazards of asbestos exposure that necessarily occurs as a result of the intended use of the product for the purpose for which it was designed — even if the product itself did not contain asbestos when manufactured and supplied, and the asbestos was released from another manufacturer's product." However, at the time of this MDL Court's February 1, 2012 adoption of the "bare metal defense" under maritime law, the defense was still the clear governing rule in Washington.

asbestos litigation were California (in <u>O'Neil v. Crane Co.</u>, 53 Cal.4th 335, 266 P.3d 987 (Cal. Jan. 12, 2012)) and Washington (in <u>Simonetta v. Viad Corp.</u>, 165 Wash.2d 341, 197 P.3d 127 (Wash. 2008), and <u>Braaten v. Saberhagen Holdings</u>, 165 Wash.2d 373, 198 P.3d 493 (Wash. 2008)).[5]

In deciding to adopt the decisions of the Sixth Circuit, this MDL Court was mindful that – unlike the present case presented by the DeVries Plaintiffs – the bulk of the thousands of asbestos cases pending in the MDL originated in the Sixth Circuit and would be remanded for trial (after completion of the MDL pre-trial process) to a district court within the Sixth Circuit (specifically, the United States District Court

---

[5]   A short, chronological summary of appellate precedent on the "bare metal" issue in asbestos cases (nationwide) at the time of this MDL Court's decision in <u>Conner</u> is as follows: (1) <u>Stark</u> (6th Cir. 2001) (addressing only strict liability claims under maritime law); (2) <u>Lindstrom</u> (6th Cir. 2005) (addressing negligence and strict liability claims under maritime law); (3) <u>Simonetta</u> (Wash. 2008)(addressing negligence and strict liability claims under Washington law); (4) <u>Braaten</u> (Wash. 2008) (negligence and strict liability claims under Washington law); (5) <u>O'Neil</u> (Cal. Jan. 12, 2012) (addressing negligence and strict liability claims under California law). Each of these decisions barred all of the types of claims it considered where there was no (or insufficient) evidence of exposure to asbestos from a "product" (or component part) that the defendant(s) either manufactured or supplied.

for the Northern District of Ohio – the same district in which Lindstrom and Stark were initially decided).[6]

It is true that, in general, matters of substantive federal law (such as maritime law) are applied by an MDL Court in accordance with the law of the Circuit in which it sits (in the case of this MDL, the law of the Third Circuit). See, e.g., Various Plaintiffs v. Various Defendants ("The Oil Field Cases"), 673 F. Supp. 2d 358, 363 n.3 (E.D. Pa. 2009) (Robreno, J.) ("in cases where jurisdiction is based on federal question, this Court, as the transferee court, will apply federal law as interpreted by the Third Circuit"); In re Korean Air Lines Disaster, 829 F.2d 1171, 1178 (D.C. Cir. 1987); Menowitz v. Brown, 991 F.2d 36, 40-41 (2d Cir. 1993) ("a transferee federal court should apply its interpretations of federal law, not the constructions of federal law of the transferor circuit"); In re Temporomandibular Joint (TMJ) Implant Prod. Liab. Litig., 97 F.3d 1050, 1055 (8th Cir. 1996) (holding that "[w]hen analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located"); Newton v. Thomason, 22 F.3d 1455, 1460 (9th Cir. 1994); Murphy v. F.D.I.C., 208 F.3d 959, 965-66 (11th Cir. 2000); see also In re Donald J. Trump

---

[6]     Specifically, these are the cases that comprise the MDL-875 maritime docket (often referred to as "MARDOC"). No. 2:02-md-00875 (master docket).

Casino Securities Litigation-Taj Mahal Litigation, 7 F.3d 357, 368 n.8 (3d Cir. 1993) (assuming without deciding that the district court correctly applied In re Korean Air Lines Disaster, 829 F.2d at 1176, in holding that Third Circuit precedent would control interpretations of federal law, but that the law of the transferor circuit merited close consideration); Eckstein v. Balcor Film Investors, 8 F.3d 1121, 1126-27 (7th Cir. 1993) (holding that a transferee court is not required to defer to the interpretation of federal law utilized by the transferor court and should, generally utilize its own independent judgment regarding the interpretation of federal law, and concluding that, "a transferee court should use the rule of the transferor forum," but only when there is a discrepancy in law between the two forums); McMasters v. U.S., 260 F.3d 814, 819 (7th Cir. 2001) (same). Importantly, however, the matter of the "bare metal defense" had never been squarely addressed by the Third Circuit in the context of asbestos litigation (or any other type of litigation). Therefore, the matter was one of "first impression" in the Third Circuit, for which there was no binding precedent.

This MDL Court was mindful that applying an interpretation of maritime law on the matter that was inconsistent with that of the Sixth Circuit would give rise to inconsistencies in the handling and outcome of the thousands of cases pending in the MDL, as some cases were being resolved in

the MDL Court during the pre-trial phase (by way of summary judgment, settlement, etc.), while, pursuant to the requirements of 28 U.S.C. § 1407 and the Supreme Court decision in Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998), those continuing on to trial in the transferor court would receive application of maritime law by a trial court located within the Sixth Circuit (which would, presumably, apply its own precedents interpreting maritime law on the matter). In all of its cases, the MDL Court has sought to ensure consistency in the handling of cases. See In re Korean Air Lines Disaster, 829 F.2d at 1175-76 (citing uniformity in the application of federal law as a primary goal in the context of a discussion of choice-of-Circuit-law by federal transferee courts in cases transferred to an MDL court pursuant to 28 U.S.C. § 1407); Menowitz v. Brown, 991 F.2d at 41 ("It would be unwieldy, if not impossible, for a court to apply differing rules of federal law to various related cases consolidated before it.").

Although the present case brought by the DeVries Plaintiffs is not part of the maritime docket of cases ("MARDOC"), the application of federal maritime law therein should be consistent with – and in uniformity with – that applied in the MARDOC cases. See id. In setting forth guidance on this matter, now-Supreme Court Justice Ginsburg wrote:

> For the adjudication of federal claims, . . . "[t]he
> federal courts comprise a single system [in which each
> tribunal endeavors to apply] a single body of law[.]"
>
>                         .    .    .
>
> Application of Van Dusen in the matter before us, we
> emphasize, would not produce uniformity. There would
> be one interpretation of federal law for the cases
> initially filed [or decided] in districts within [one]
> Circuit, and an opposing interpretation for cases
> filed [or decided] elsewhere. . . . Indeed, **because
> there is ultimately a single proper interpretation of
> federal law, the attempt to ascertain and apply
> diverse circuit interpretations simultaneously is
> inherently self-contradictory.** Our system contemplates
> differences between different states' laws; thus a
> multidistrict judge asked to apply divergent state
> positions on a point of law would face a coherent, if
> sometimes difficult, task. But **it is logically
> inconsistent to require one judge to apply
> simultaneously different and conflicting
> interpretations of what is supposed to be a unitary
> federal law.**

In re Korean Air Lines Disaster, 829 F.2d at 1175-76 (internal

citations omitted) (emphasis added). In considering the adoption

of Lindstrom's maritime law "bare metal defense," this MDL Court

explained in Conner:

> [W]here, as here, a defense arises under federal law
> and the U.S. Supreme Court has not ruled on the issue,
> the transferee court typically applies the law of the
> circuit in which it sits, that is, Third Circuit law.
> See, e.g., Oil Field Cases, 673 F. Supp. 2d 358, 362–
> 63 (E.D. Pa. 2009)(Robreno, J.). **The law of a
> transferor forum "merits close consideration,** but does
> not have stare decisis effect" on the transferee
> court. In re Korean Air Lines Disaster of Sept. 1,
> 1983, 829 F.2d 1171, 1176 (D.C. Cir.1987), aff'd sub
> nom. Chan v. Korean Air Lines, Ltd., 490 U.S. 122, 109
> S. Ct. 1676, 104 L. Ed. 2d 113 (1989); see also
> Federal Judicial Center, Manual for Complex Litigation
> § 20.132, at 222 (4th ed. 2004) ("**Where the claim or
> defense arises under federal law, however, the**

> **transferee judge should consider whether to apply the law of the transferee circuit or that of the transferor court's circuit....").**

842 F. Supp. 2d at 794 n.4 (emphasis added).

In sum, in the absence of Third Circuit precedent on this issue of maritime law (and the absence of any other precedent on the matter from any United States Court of Appeals), this court factored in (1) the goal of uniformity of application of maritime law (both within and beyond the MDL), (2) the fact that, at the time, the Sixth Circuit precedent of Lindstrom was (a) the only pronunciation of maritime law on the matter from any federal appellate court, and (b) the "majority rule" (i.e., in keeping with the rulings of the only two states whose highest courts had considered the issue, and also in keeping with an earlier recommendation by an MDL-875 magistrate judge), and (3) policy considerations surrounding products liability law. See 842 F. Supp. 2d at 800-01. After doing so, it decided to adopt the holdings of Lindstrom in applying the maritime law "bare metal defense" in cases pending in MDL-875. Since its adoption of the Lindstrom rule in 2012, the MDL Court has consistently applied the rule in dozens of cases (and hundreds of summary judgment motions) governed by maritime law.

## II.  Application of the "Bare Metal Defense" Under <u>Lindstrom's</u> Pronunciation of Maritime Law

### A.  In General

Under maritime law, as set forth in <u>Lindstrom</u>, a plaintiff must show evidence of (sufficient) exposure to asbestos from a defendant's own "product" in order to hold a product manufacturer liable under any theory of liability (whether strict liability or negligence). <u>See</u> <u>Lindstrom</u>, 424 F.3d at 492, 496-97. Necessarily, then, maritime law imposes no duty upon a product manufacturer to warn of the dangers associated with another manufacturer's "product" (or component part). <u>See</u> <u>id.</u> For this reason, there can be no liability in negligence for asbestos exposure arising from a product (or component part) that a manufacturer defendant did not manufacture or supply (as a plaintiff will not be able to establish the breach of any duty to warn about that other product).

To be sure, despite acknowledging the availability under maritime law of a negligence[7] cause of action against a product manufacturer, <u>see</u> 424 F.3d at 492, the <u>Lindstrom</u> Court

---

[7]     For the sake of clarity, this MDL Court notes that it deems a "negligent failure-to-warn claim" to be a type of common law <u>negligence</u> claim. A separate (but related) warning-related claim exists in <u>strict liability</u> (and is, under some states' law, subject to different analysis): defective warning and/or defective design (insofar as the alleged defective design is a design with either no warning or a deficient warning).

nonetheless explicitly stated that, under maritime law, a
product manufacturer (such as a pump manufacturer) "cannot be
held responsible for the asbestos contained in another product"
(such as a gasket used in connection with a pump, but which the
pump manufacturer neither manufactured nor supplied),[8] 424 F.3d
at 496 (citing Stark, 21 F. App'x at 381), and "cannot be held
responsible for asbestos containing material that [] was
incorporated into its product post-manufacture."[9] Id. at 497

---

[8]     In Lindstrom, defendant Coffin (a pump manufacturer) was
sued for asbestos exposure arising from the following products
used in connection with its pumps: (1) external insulation, (2)
replacement gaskets, (3) original packing rings, and (4)
replacement packing rings. The Sixth Circuit held that defendant
Coffin could not be liable for asbestos in any of these (except
for the original packing rings) because there was no evidence
that they were manufactured (or supplied) by it. Although it
acknowledged that defendant Coffin would be liable for asbestos
exposure arising from the original packing rings (because the
evidence indicated that they were manufactured (and/or supplied)
by defendant Coffin with its pumps), Coffin faced no liability
in connection with these asbestos products, because there was no
evidence that the plaintiff was exposed to respirable dust from
these original packing rings – and, to the contrary, there was
testimony from plaintiff that the rings were not "dusty" when he
removed them (i.e., there was no evidence of exposure to
asbestos in connection with these products).

[9]     The Lindstrom court found that Ingersoll Rand, a defendant
who manufactured air compressors, was not liable for asbestos
exposure arising from packing material that was used in its air
compressors, but which it did not manufacture (or supply). In
explaining the rule of maritime law, the court wrote:

> **Even if** [plaintiff] Lindstrom's testimony is
> sufficient to establish that **he came in contact with
> sheet packing material containing asbestos in
> connection with an Ingersoll Rand air compressor,**
> [product manufacturer defendant] Ingersoll Rand cannot

(citing Stark, 21 F. App'x at 381). Intrinsic in these holdings are the conclusions that, in the maritime law regime, an asbestos product manufacturer defendant (1) has no "duty" to warn about a "product" that it did not manufacture or supply (and has a "duty" to warn only about "products" it manufactured or supplied), and, in keeping with this delineation of "duty," (2) can only be liable in negligence if there is evidence of (a sufficient amount of) exposure to asbestos from a "product" it manufactured or supplied, in part because the "causation" element is not satisfied (i.e., a "breach" of the "duty" to warn has only "caused" the injury at issue where the alleged asbestos exposure has arisen from a "product" for which the manufacturer defendant had a "duty" to warn). See Lindstrom, 424 F.3d at 492, 496-97.[10]

---

be held responsible for asbestos containing material that [] was incorporated into its product post-manufacture. See Stark, 21 Fed. Appx. at 381; Koonce, 798 F.2d at 715. **Lindstrom did not allege that any Ingersoll Rand product itself contained asbestos.** As a result, plaintiffs-appellants cannot show that an Ingersoll Rand product was a substantial factor in Lindstrom's illness, and we therefore affirm the district court's grant of summary judgment in Ingersoll Rand's favor.

424 F.3d at 497 (emphasis added).

[10]   This is apparent from the Sixth Circuit's explanation and discussion. At the risk of repetition, for the sake of clarity and to be fully responsive to the questions posed by the Third Circuit on remand, that discussion, verbatim, was as follows:

In adopting the rules of <u>Lindstrom</u>, this MDL Court made clear in <u>Conner</u> that it was aware of and had considered the negligence claims of the plaintiffs therein – and that it was applying the <u>Lindstrom</u> rule(s) not only to the plaintiffs' strict liability claims, but also to their negligence claims. Specifically, the <u>Conner</u> opinion stated that, "[h]aving held as a matter of law that a manufacturer is not liable for harm

---

(1) "Even if [plaintiff] Lindstrom's testimony is sufficient to establish that he came in contact with sheet packing material containing asbestos in connection with an Ingersoll Rand air compressor, **Ingersoll Rand cannot be held responsible for asbestos containing material that [] was incorporated into its product post-manufacture.** <u>See</u> <u>Stark</u>, 21 Fed. Appx. at 381; <u>Koonce</u>, 798 F.2d at 715. Lindstrom did not allege that any Ingersoll Rand product itself contained asbestos. As a result, plaintiffs-appellants cannot show that an Ingersoll Rand product was a substantial factor in Lindstrom's illness, and we therefore affirm the district court's grant of summary judgment in Ingersoll Rand's favor." 424 F.3d at 497 (emphasis added);

and

(2) "The information presented establishes that the only asbestos-containing products, aside from the graphite-coated packing rings, to which Lindstrom was exposed in connection with any Coffin Turbo products were not manufactured by Coffin Turbo, but rather products from another company that were attached to a Coffin product. **Coffin Turbo cannot be held responsible for the asbestos contained in another product.**" <u>Id.</u> at 496 (emphasis added).

<u>See also</u> footnote 11 herein (discussing "duty" and "causation" as set forth by <u>Lindstrom</u>), and footnote 12 herein (discussing "product" as defined by <u>Lindstrom</u>).

caused by the asbestos products that it did not manufacture or
distribute . . . Defendants are entitled to summary judgment on
Plaintiffs' products-liability claims based on **strict liability
and negligence.**" 842 F. Supp. 2d at 803 (emphasis added). This
MDL Court's subsequent application of <u>Conner</u> in dozens of cases
(including the present case) has consistently applied the rules
of <u>Lindstrom</u> and <u>Conner</u> as a bar to both types of claims.

### B.   Uniform Application to Negligence Claims and Strict Liability Claims

Maritime law (as set forth in <u>Lindstrom</u> and <u>Stark</u>)
bars both negligent failure-to-warn claims and strict product
liability claims[11] in the absence of (sufficient) evidence of

---

[11]   As explained by this MDL Court in <u>Conner</u>, the reason the
defense applies equally and uniformly to both types of claims
under maritime law is that, under maritime law's construction
and definition of the term "product" (i.e., that product for
which a given defendant can be liable), as set forth in
<u>Lindstrom</u>, there is an inability of a plaintiff to establish
causation with respect to the defendant's "product" (i.e., a
sufficient amount of exposure to asbestos from the defendant's
product – as opposed to asbestos from the product of another
manufacturer/supplier that is used in connection with the
defendant's product but was neither manufactured nor supplied by
the defendant)), regardless of the theory of liability
underlying the claim (as a showing of causation is required for
both negligence and strict liability claims). 842 F. Supp. 2d at
797 (citing <u>Lindstrom</u>). In <u>Lindstrom</u>, the Sixth Circuit
explicitly stated this rule of maritime law:

> Plaintiffs in products liability cases under maritime
> law may proceed **under both negligence and strict
> liability theories. Under either theory, a plaintiff
> must establish causation.** <u>Stark v. Armstrong World
> Indus., Inc.</u>, 21 Fed. Appx. 371, 375 (6th Cir. 2001).
> **We have required that a plaintiff show,** for each

exposure to asbestos from the defendant's "product" (as defined by <u>Lindstrom</u>).[12] To state this differently, <u>Lindstrom</u> holds that, under maritime law, a plaintiff must show evidence of (sufficient) exposure to asbestos from a defendant's own "product" in order to hold a product manufacturer liable under any theory of liability (whether strict liability or negligence).

It follows then that, under maritime law (unlike, for example, Pennsylvania law, as recently predicted by this MDL Court in <u>Schwartz v. Abex Corp.</u>, 106 F. Supp. 3d 626 (E.D. Pa.

---

defendant, that (1) he was **exposed to <u>the defendant's product</u>**, and (2) the product was a substantial factor in causing the injury he suffered. <u>Id.</u>

424 F.3d at 492 (emphasis added). Implicit in this rule is the holding that a product manufacturer has no duty to warn about hazards arising from another manufacturer's product (or component part). Accordingly, the MDL Court addressed negligence claims in <u>Conner</u> when it declared, "this Court adopts <u>Lindstrom</u> and now holds that, under maritime law, a manufacturer is not liable for harm caused by, and **owes no duty to warn of the hazards inherent in, asbestos products that the manufacturer did not manufacture or distribute**." 842 F. Supp. 2d at 801 (emphasis added).

[12]    The definition of "product" utilized by maritime law, as set forth in <u>Lindstrom</u>, can be inferred from that court's discussion and handling of the claims brought against defendants Coffin and Ingersoll Rand. (<u>See</u> footnotes 8 and 9 herein.) Under maritime law, a defendant's "product" is one that it has manufactured or supplied. This includes <u>original</u> component parts (i.e., component parts supplied by the defendant in/with the product), but does <u>not</u> include external insulation or <u>replacement</u> components parts that were neither manufactured nor supplied by the defendant.

2015) (Robreno, J.)[13]), it is not necessary to analyze the two types of claims separately, as maritime law's definition of a "product" for which a defendant can be liable (under either theory of liability[14]) renders the defense equally and indistinguishably applicable to both types of claims. For this reason, this Court's decisions on Defendants' summary judgment motions did not analyze Plaintiff's negligence and strict liability claims separately. Instead, upon concluding that there was no evidence of exposure to asbestos from a given defendant's "product(s)," simultaneously and uniformly applied the "bare metal defense" to all claims against it.

---

[13]   This MDL Court's prediction of Pennsylvania law, as set forth at length in Schwartz, was driven in large part by "the recent Pennsylvania Supreme Court decision in Tincher, which pronounces the availability of negligence causes of action (in addition to strict liability causes of action) against product manufacturers," 106 F. Supp. 3d at 652, and, unlike the maritime law rule of Lindstrom, does not explicitly premise a negligence cause of action upon a showing of asbestos exposure arising from the defendant's own "product."

[14]   With respect to a negligence theory of liability: under maritime law, a product manufacturer defendant has no duty to warn about asbestos hazards arising from another manufacturer's product (or component part) – thus no negligence cause of action (for failure to warn) can be brought against a product manufacturer defendant for harm arising from exposure to another manufacturer's product (or component part). With respect to a strict product liability theory of liability: a product manufacturer cannot be strictly liable for a product (or component part) that is not its own product (i.e., over which it had no control). See Conner, 842 F. Supp. 2d at 801 (citing Lindstrom).

In short, to be clear, Conner (the governing rule applied in the present case brought by the DeVries Plaintiffs) holds that, under maritime law (as set forth by Lindstrom and adopted by Conner), the so-called "defense" applies to both negligence and strict product liability claims (as asserted against a product manufacturer defendant[15]) and bars both types of claims where there is no evidence (or insufficient evidence) of exposure to asbestos from the defendant's "product."

### III. Maritime Law Versus State Law: Differing Applications of the "Bare Metal Defense"

Maritime law (as set forth in Lindstrom) has established a bright-line rule regarding the "product(s)" for which a product manufacturer can be liable. This rule requires that a plaintiff establish (sufficient) exposure to asbestos

---

[15]   To the extent that a defendant in asbestos litigation has a status other than – or in addition to – that of "product manufacturer" (e.g., shipowner, shipbuilder, employer, etc.), the "bare metal defense" and analysis of the "bare metal" issue are, generally, inapplicable; and a separate and distinct analysis of liability (under the concept of general common law negligence and/or other statutes, such as the Jones Act) is likely warranted and appropriate. See, e.g., Mack v. General Electric Co., 896 F. Supp. 2d 333, 346 (E.D. Pa. 2012) (Robreno, J.) (holding that, under maritime law, a Navy ship is not a "product" for purposes of strict product liability law), and Filer v. Foster Wheeler LLC, 994 F. Supp. 2d 679, 687-95 (E.D. Pa. 2012) (Robreno, J.) (holding that, under maritime law, the builder of a Navy ship owes a common law duty to exercise reasonable care under the circumstances, in issuing warnings to Navy seaman (and others) of the hazards of asbestos present aboard the Navy ships they build).

from the defendant's own "product" in order to maintain either a negligence or strict liability claim (thus holding (implicitly) that a product manufacturer defendant has no duty to warn about any product that is not its own "product").[16] None of the circumstances or exceptions identified in the February 5th Order (and its citation to numerous decisions from other courts) impacts the analysis of Plaintiffs' maritime law claims against the present appealing Defendants (all of whom are product manufacturer defendants).[17] This is because, with one exception,

---

[16]   See footnotes 11 and 12 herein.

[17]   The Court notes that the four (4) circumstances outlined by the February 5th Order comprise an effort of the various courts to distill into a rule of law (for application in the context of an asbestos action) the "knew or should have known" requirement that generally exists for a common law negligence cause of action (and, in particular, a negligent failure-to-warn claim) brought against a product manufacturer in a product liability action (and, specifically, the element of "duty" that a plaintiff contends has been breached). See 57A Am. Jur. 2d Negligence §§ 357, 359 ("Duty to Warn. Generally" (§357) ("A person who controls an instrumentality or agency that he or she knows or should know to be dangerous and which creates a foreseeable peril to others has, if the danger is not obvious and apparent, a duty to give warning of the danger"); "Duty to Warn. Foreseeability" (§359) ("If a product has dangerous propensities, a duty to warn generally arises where there is unequal knowledge, either actual or constructive, with respect to the risk of harm, and the defendant, possessed of such knowledge, knows or should know that harm might occur absent a warning.")).

Importantly, however, none of the rules/circumstances identified by the February 5th Order impacts the viability of a negligent failure-to-warn claim brought under maritime law, because of the fact that, under maritime law, an asbestos product manufacturer defendant (1) has no "duty" to warn about a

the cases cited by the February 5th Order all involved application of a given state's law, rather than maritime law. See Surre v. Foster Wheeler LLC, 831 F. Supp. 2d 797 (S.D.N.Y. 2011)(New York law); O'Neil, 53 Cal.4[th] 335, 266 P.3d 987 (California law); May v. Air & Liquid Sys. Corp., -- A.3d – , 2015 WL 9263907 (Md. Dec. 18, 2015)(Maryland law); Sparkman v. Goulds Pumps, Inc., No. 12-02957, 2015 WL 727937 (D.S.C. Feb. 19, 2015)(South Carolina law); In re New York City Asbestos Litig., 990 N.Y.S.2d 174 (N.Y. App. Div. 2014)(New York law); Braaten, 165 Wash.2d 373, 198 P.3d 493 (Washington law); Schwartz, 106 F. Supp. 3d 626 (Pennsylvania law); Macias, 175 Wash.2d 402, 282 P.3d 1069 (Washington law). The rule of law set forth in each of these cases reflects a policy determination of that particular state – a policy determination which need not be consistent with the policy determination underlying maritime law.[18] See East River Steamship Corp. v. Transamerica Delaval,

---

"product" that it did not manufacture or supply (and has a "duty" to warn only about "products" it manufactured or supplied), and, in keeping with this delineation of "duty," (2) can only be liable in negligence if there is evidence of (a sufficient amount of) exposure to asbestos from a "product" it manufactured or supplied, in part because the "causation" element is not satisfied. See Lindstrom, 424 F.3d at 492, 496-97.

[18]   As explained by this Court in Schwartz, "whether or not a given . . . law recognizes the so-called 'bare metal defense' . . . is a matter determined largely by how that [jurisdiction] defines the 'product' at issue. As such, the determination is largely a matter of policy." 106 F. Supp. at 635-37.

Inc., 476 U.S. 858, 864-66, 106 S. Ct. 2295, 90 L. Ed. 2d 865
(1986) (absent a controlling statute, maritime law is "developed
by the judiciary" and reflects, inter alia, "public policy
judgment[s]"); Mack v. General Electric Co., 896 F. Supp. 2d
333, 338 (E.D. Pa. 2012) (Robreno, J.) (discussing policy
considerations unique to maritime law); Norfolk Southern Railway
Co. v. Kirby, 543 U.S. 14, 25-19, 125 S. Ct. 385, 394-96
(2004)(same); Cobb Coin Co., Inc. v. Unidentified, Wrecked and
Abandoned Sailing Vessel, 525 F. Supp. 186, 201-03 (S.D. Fla.
1981)(same).

 The sole maritime law case cited by the February 5th
Order is Quirin v. Lorillard Tobacco Co., 17 F. Supp. 3d 760
(N.D. Ill. 2014), which was decided two years after this MDL

---

 Moreover, maritime law is concerned with promoting
uniformity in the law of the sea. See Miles v. Apex Marine
Corp., 498 U.S. 19, 111 S. Ct. 317, 112 L. Ed. 2d 275 (1990)
(discussing Moragne v. States Marine Lines, Inc., 398 U.S. 375,
401, 90 S. Ct. 1772, 26 L. Ed. 2d 339 (1970)); Miller v.
American President Lines, Ltd., 989 F.2d 1450, 1462 (6th Cir.
1993). The interests of maritime law are separate and different
from those of land-based law. See e.g., Mack v. General Electric
Co., 896 F. Supp. 2d 333, 338 (E.D. Pa. 2012) (Robreno, J.);
Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 25-19, 125
S. Ct. 385, 394-96 (2004); Cobb Coin Co., Inc. v. Unidentified,
Wrecked and Abandoned Sailing Vessel, 525 F. Supp. 186, 201-03
(S.D. Fla. 1981). As such, it need not – and likely should not –
conform to states' policy determinations where doing so would
create inconsistencies within maritime law (such as, for
example, inconsistencies across the Third and Sixth Circuits in
the application of maritime law in – and accompanying resolution
of – virtually identical asbestos cases).

Court's decision in <u>Conner</u>. The Court has reviewed Judge
Gottschall's thorough and well-reasoned decision in <u>Quirin</u> and
has identified the source of divergence between the <u>Conner</u> and
<u>Quirin</u> decisions: <u>Quirin</u> is premised on Judge Gottschall's
construction of the <u>Lindstrom</u> decision as one that "did not
discuss a failure to warn claim," 17 F. Supp. 3d at 768, leading
Judge Gottschall to proceed with setting forth maritime law as
to such a claim, while <u>Conner</u> has construed <u>Lindstrom</u> as already
encompassing the rule of law on negligent failure-to-warn claims
(as well as strict liability defective design/warning claims) –
a rule consistent with those set forth regarding state law in
<u>O'Neil</u>, <u>Simonetta</u>, and <u>Braaten</u> – decisions which each considered
and relied upon <u>Lindstrom</u> in determining its respective rule of
law regarding negligent failure-to-warn.[19]

_____

[19]    Specifically, in <u>Conner</u>, this MDL Court explained that, in
addition to strict liability for defective design/warning, "a
manufacturer is also liable for the harm resulting from the
**negligent failure to warn** of the risks created by **its** products."
842 F. Supp. 2d at 797 (emphasis added). It relied on <u>Lindstrom</u>
in setting forth the applicable rule of law:

> In determining whether Defendant manufacturers are
> liable under maritime law for injuries caused by
> asbestos parts used with their products, **whether in
> strict liability or negligence, a plaintiff must
> establish causation with respect to each defendant
> manufacturer. See** <u>**Lindstrom v. A–C Prod. Liab. Trust**</u>**,
> 424 F.3d 488, 492 (6th Cir.2005). A plaintiff
> establishes causation under maritime law by showing**
> (1) that the plaintiff was **exposed to the defendant's
> product** and (2) that the product was a substantial
> factor in causing the plaintiff's injury. **See** <u>**id.**</u>**"**

Id. (emphasis added). It concluded that this construction was accurate, in part, because of the decisions in O'Neil, Simonetta, and Braaten, each of which considered Lindstrom as instructive and persuasive precedent regarding a negligent failure-to-warn claim. A summary of the relevant aspect of each of those three cases is as follows:

After considering Lindstrom, O'Neil found that there is "no duty to warn of defects in another manufacturer's product" and "no duty of care to prevent injuries from another manufacturer's product," because "[t]he same policy considerations that militate against imposing strict liability in this situation apply with equal force in the context of negligence." 266 P.3d at 997, 1006-07.

The Simonetta court found Lindstrom to be the precedent most factually similar to the case before it, and held that, "[b]ecause [evaporator manufacturer defendant] Viad was not in the chain of distribution of the dangerous product [i.e., asbestos-containing insulation used with the evaporator], we conclude not only that it had no duty to warn under negligence, but also that it cannot be strictly liable for failure to warn." 197 P.3d at 138.

Extending the holding of Simonetta to replacement parts, the Supreme Court of Washington noted in Braaten that Lindstrom was "particularly instructive," and held that a valve manufacturer defendant (Henry Vogt) had "no duty under common law products liability or negligence principles to warn of the dangers of exposure to asbestos in products it did not manufacture and for which the manufacturer was not in the chain of distribution. These holdings apply here and **foreclose** the plaintiff's products liability and **negligence claims based on failure to warn of the danger of exposure to asbestos** (1) in insulation applied to pumps and valves the defendant-manufacturers sold to the navy, where the manufacturers did not manufacture or sell the insulation and were not in the chain of distribution of it and (2) **in replacement packing and gaskets installed in or connected to the pumps and valves after they were installed aboard ships, where the manufacturers did not manufacture or sell the replacement packing and gaskets and were not in the chain of distribution of these products.**" 198 P.3d at 504 (emphasis added).

23

In short, the rules of law surrounding the circumstances identified by the February 5th Order are creatures of state law – and determinations of state policy – that are not applicable under maritime law (as construed by this MDL Court to have been set forth in <u>Lindstrom</u> and <u>Stark</u>).

**IV.  Summary and Conclusion**

In adopting the so-called "bare metal defense" under maritime law (as set forth in <u>Lindstrom</u>) and applying it to subsequent MDL cases (including the present case), this MDL Court (1) has considered plaintiffs' negligent failure-to-warn claims, (2) has determined that, when applicable, the defense (as set forth by <u>Lindstrom</u>) bars both strict liability and negligent failure-to-warn claims, and (3) has concluded that maritime law's application of the defense (as illustrated by <u>Lindstrom</u>) rejects potential liability of a product manufacturer in negligence for products (or component parts) that it did not manufacture or supply (i.e., rejects separate and different analyses of negligence liability and strict liability).

**BY THE COURT,**


**/s/ Eduardo C. Robreno**
**EDUARDO C. ROBRENO,   J.**